Defendant, Angela Harris, appeals from her conviction and sentence for child endangering.
Harris was hired by Sonia Gilmer to babysit her three-month old daughter, Kayla Gilmer, while Gilmer worked during the day. On January 28, 1997, Gilmer dropped off Kayla at 8:00 a.m. at Harris's home. At approximately 12:00 p.m. Kayla began to have difficulty breathing and her eyes were rolling back in her head. Harris called 911 and a Dayton police officer arrived. An emergency squad subsequently arrived and transported Kayla to the hospital.
A detective from the Dayton Police Department took a statement from Defendant Harris that evening. Harris's recollection of the events immediately preceding Kayla's medical distress changed numerous times from her interview by the Dayton police officer who first arrived on the scene and her statement to the Dayton police detective that evening.
Doctors examined Kayla and found very few external signs of abuse. Doctors did find that Kayla had experienced retinal hemorrhages and a subdural hematoma. Because of the presence of both injuries simultaneously and the lack of other possible causes of these injuries, such as a car accident or a fall from a great height, doctors concluded that Kayla was a victim of shaken baby syndrome. Police arrested Harris because she was the sole caretaker of Kayla when she exhibited the symptoms of shaken baby syndrome, which tend to occur shortly after the trauma involved.
The trial court, sitting without a jury, convicted Harris of a violation of R.C. 2919.22 (A), which criminalizes child endangering. The trial court sentenced Harris to two years imprisonment. Harris appeals, presenting two assignments of error.
FIRST ASSIGNMENT OF ERROR
 THE STATE OF OHIO DID NOT DEMONSTRATE WITH PROOF BEYOND A REASONABLE DOUBT THAT ANGELA HARRIS WAS GUILTY OF CHILD ENDANGERMENT.
Harris's first assignment of error does not state a basis for appellate review because it merely raises a question of fact. App.R. 2. The Court will construe Harris's argument as meaning that the trial court's decision is against the manifest weight of the evidence and should be reversed.
Weight of the evidence concerns
 "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence
sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."
State v. Thompkins (1997), 78 Ohio St.3d 380, 386, 387 (quoting Black's Law Dictionary (6 Ed. 1990) 1594).
A weight of the evidence review considers all the evidence, not only that which supports the verdict, as well as the credibility of the witnesses. Id. However, deference must be given to the resolution of those issues by the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230. Further, "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weights heavily against the conviction." State v. Thompkins, supra, at 387 (quoting State v. Martin (1983), 20 Ohio App.3d 172, 175).
The trial court convicted Harris of a violation of R.C.2919.22(A), which states in relevant part:
 No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support.
"Recklessness" is the mental state that applies when one has endangered a child. State v. Adams (1980), 62 Ohio St.2d 151. R.C. 2901.22(C) defines recklessness as follows:
 A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist.
The State called as witnesses three doctors who had treated Kayla for the injuries that she had sustained.
Dr. Robert Bloom, a pediatric ophthalmologist, diagnosed Kayla's retinal hemorrhages. He testified that compression on a child's thorax could cause a retinal hemorrhage, but it would not cause a subdural hematoma. (T. 70). Dr. Bloom stated that retinal hemorrhages in conjunction with a subdural hematoma are usually associated with shaken baby syndrome. (T. 58). Doctors had ruled out other possible causes of retinal hemorrhages, such as bleeding disorders, in Kayla's case. Dr. Bloom further testified that the injuries that Kayla sustained were not a result of some incidental force, such as a mild shaking, but were a result of a major trauma, such as whiplash or shaken baby syndrome.
Harris argues that the following statement by Dr. Bloom undermines the State's case against her:
 Mr. Weaver: And I believe you just told the Court that the amount of hemorrhage/bleeding may or may not be related to the amount of force; am I correct?
 Dr. Bloom: Right. It would be like you hitting your arm and having a blood vessel break in your arm and sometimes you get a really big bruise and sometimes it's not, but, you know, and if you hit it really hard, you would increase the likelihood of more bleeding. It doesn't always have to be the case. (T. 64).
It is unclear how this statement undermines the state's case against Harris. Dr. Bloom previously had stated that there is not a direct correlation between the amount of force needed to break a blood vessel and the amount of blood that is discharged. (T. 60). Dr. Bloom merely indicated that the amount of trauma inflicted on Kayla could have been more or less than the manifestation of the trauma — the subdural hematoma — reflected. He also testified, however, that it would take significant trauma to inflict these injuries, not an incidental force.
Second, the State called Dr. Michael Chaparro, a pediatric neurosurgeon who examined Kayla for a neurosurgical consultation. Using two different types of scans, a CT and a MRI, Dr. Chaparro testified that the images generated by the two scans are consistent with a subdural hematoma. Like Dr. Bloom, Dr. Chaparro testified that rapid acceleration or deceleration of the head, such as in a car accident, a fall from a great height, or shaken baby syndrome, usually causes a shearing of blood vessels, from which a subdural hematoma results. Dr. Chaparro also testified that the amount of bleeding is not proportionate to the amount of force that caused that injury. (T. 87). He stated that "[t]he mere presence of a subdural hematoma is by itself the indication of a high energy injury." (T. 88)
The third doctor who the State called as a witness was Dr. Ralph Hicks, a pediatrician on the Child Abuse Team. Dr. Hicks had observed many cases of child abuse, and the trial court recognized him as an expert in the area of child abuse.
Dr. Hicks testified that the symptoms of shaken baby syndrome would manifest themselves shortly after the trauma occurs. Based on his personal examination of Kayla, his review of Dr. Bloom's and Dr. Chaparro's reports, the MRI and CT scans, Dr. Hicks opined that Kayla's injuries were consistent with shaken baby syndrome. (T. 207-08). He gave the following three reasons why he had concluded Kayla's injuries were not accidental: 1) the presence of the subdural hematoma and the retinal hemorrhages; 2) the conflicting explanations of how the trauma occurred; and 3) the explanations were implausible because they could not produce the significant trauma needed for shaken baby syndrome. (T. 216).
There is competent, credible evidence from which a trier of fact could conclude that Kayla was the victim of shaken baby syndrome and that Harris was the one who had so injured Kayla. Construing all of the evidence in a light most favorable to the State, we conclude that the trial court could have rationally found all the elements stated in the statute, proving Harris's guilt beyond a reasonable doubt.
Harris's first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT INCORRECTLY IMPOSED A DEGREE OF CULPABILITY OF STRICT LIABILITY, IN DETERMINING ANGELA HARRIS' GUILT RATHER THAN A DEGREE OF CULPABILITY OF RECKLESSNESS.
Harris argues that the trial court erred because it applied a strict liability standard to find her guilty of child endangering. Harris implies that because the trial court found her guilty of R.C. 2919.22(A), it necessarily interpreted the statute to be a strict liability offense. However, this Court finds no basis in the record to support Harris's argument.
The trial court did not state that it applied a strict liability standard. As the trial was to the court, there were no jury instructions on the issue. The State argued in its closing argument that the proper standard was recklessness. (T. 247).
R.C. 2919.22(A) does not specify any degree of culpability. R.C. 2901.21(B) provides:
 When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in such section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense.
Because R.C. 2919.22(A) neither specifies a mental state requirement nor indicates a legislative intent that it be a strict liability offense, recklessness is the appropriate standard on which to determine criminal liability. The Supreme Court of Ohio addressed this issue in discussing division (B)(2) of R.C. 2919.22 and concluded that "recklessness" is the culpable mental state required for its violation. State v.Adams (1980), 62 Ohio St.2d 151.
There is a presumption of regularity that a trial court acted correctly in the proceedings before it. Coleman v. McGettrick
(1965), 2 Ohio St.2d 177, 180. The State presented sufficient evidence from which the trial court could conclude that Harris acted recklessly. The testimony by the three doctors who were witnesses at the trial indicated that substantial force was required to cause the subdural hematoma. A fall from a couch or a gentle shake would be insufficient to create such a substantial force that is needed to produce a subdural hematoma. It is thus reasonable that the trial court concluded that Harris had acted recklessly, thereby harming Kayla.
Harris's second assignment of error is overruled.
Having overruled Harris's two assignments of error, the judgment of the trial court is affirmed.
YOUNG, P.J. and FAIN, J., concur.
Copies mailed to:
Karyn J. Lynn, Esq. David J. Fierst, Esq. Hon. Mary E. Donovan